IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH B. MATTHEWS

      Plaintiff,                    No. CIV S-09-2415 GGH P

      vs.

LAHEY, et al.,                      ORDER and

      Defendants.          FINDINGS AND RECOMMENDATIONS[1]

_____/

I. Introduction

      Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to plaintiff's consent. See 28 U.S.C. § 636; see also E.D. Cal. Local Rules, Appx. A, at (k)(1)-(2). This action is proceeding on the original complaint filed on August 27, 2009. Also on August 27, 2009, plaintiff filed a motion for a preliminary injunction (Doc. 4). On October 13, 2009, the court ordered defendants served and on October 21, 2009, the court ordered the motion for a preliminary injunction served

---

[1] Although plaintiff consented to have this case proceed before the undersigned, the unserved defendants who responded herein have not yet consented. The undersigned finds it improper therefore to proceed at this time as if the entire case is to proceed before the undersigned.

1

upon the Office of the Attorney General and ordered a response within fourteen days.  The Attorney General timely responded (Doc. 14).

II.   Complaint/Injunctive Relief

       Plaintiff, who was forty-seven years old at the time of the injury, alleges that defendants were deliberately indifferent to his serious medical needs and continue to improperly treat him.  On December 26, 2007, plaintiff was exercising when he heard several 'pops' from his right shoulder area and immediately felt pain and discomfort emanating from his shoulder.  Plaintiff proceeded to the emergency clinic where he waited two hours before being seen by a doctor.  The doctor X-rayed plaintiff's shoulder, told plaintiff he was fine and ordered a clavicle brace.  A clavicle brace was not available so plaintiff was given an arm sling.  Plaintiff was told to 'lay-in' for six weeks and was given pain medication.

       For the next few days plaintiff continued to feel pain and discomfort and had difficulty working and sleeping.  On January 3, 2008, plaintiff's pain medication was altered due to his upset stomach.  On January 22, 2008, plaintiff was seen by another doctor who examined plaintiff and concluded nothing was wrong.  On January 23, 2008, another doctor re-examined the X-ray taken on December 26, and observed that plaintiff suffered a medial third fracture and a separation in his right shoulder.  Plaintiff was then scheduled to see an orthopedic specialist.

       Over the next three months plaintiff did not receive any other treatment except for pain medication, which he states was not working.  Nor did plaintiff ever receive the clavicle brace.  During this time, plaintiff contends he began developing an arthritic condition in his right hand as a result of his injured right shoulder.

       On May 24, 2008, plaintiff was taken to Queen of the Valley Hospital, where staff X-rayed his shoulder and told him that his shoulder had been fractured, had healed incorrectly and recommended surgery.  For the next four to five months plaintiff continued to complain of pain and he did not receive physical therapy, even though it was ordered by the prison doctors.  As of the time of filing the complaint, August 19, 2009, plaintiff had not received physical

therapy or a clavicle brace.

Plaintiff's motion for a preliminary injunction repeats the facts and allegations of the complaint.  Specifically, plaintiff seeks: 1) to be examined by a medical practitioner with expertise in the treatment of broken shoulders; 2) to immediately be given a clavicle brace; 3) to receive any treatment suggested by the medical practitioner discussed above; and 4) to immediately receive physical therapy.

III. Legal Standards for Injunctive Relief

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, __F.3d__, 2009 WL 3448435 *13 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S.Ct. 365, 375-76 (2008).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

IV. Legal Standards for Eighth Amendment Medical Claim

In proceeding on a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S.Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S.Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S.Ct. at 1981.

It is nothing less than recklessness in the criminal sense-subjective standard-disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S.Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S.Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S.Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S.Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

V. <u>Discussion</u>

     <u>Defendants' Response</u>

Defendants' response to the motion for a preliminary injunction included a declaration from the chief medical officer at plaintiff's prison, Dr. Traquina, who reviewed and attached plaintiff's medical records. At the December 26, 2007, physical exam, an X-ray was taken and doctors diagnosed a fracture of the right clavicle but the X-ray showed neither significant abnormality nor evidence of instability. On that date, plaintiff was issued chronos for a lower bunk, a clavicle brace, a 'no get-down' to accommodate his physical limitations and placed on 'lay-in' for twenty-nine days. However, a clavicle brace was not available so plaintiff was given an arm sling and plaintiff received pain medication. Dr. Traquina stated that an arm sling provides similar immobilization as a clavicle brace.

On January 22 and 23, 2008, pain medication was altered to accommodate plaintiff's intolerance to the medication, additional X-rays were ordered, plaintiff was issued chronos for a lower bunk and light work for one year, and a referral to the orthopedist was expedited.

On May 17, 2008, plaintiff was treated by an orthopedist who ordered X-Rays and a CT scan. The orthopedist treated plaintiff again in February 2009 and diagnosed a healed fracture of the right clavicle and recommended an increase in physical activity of the injured area.

On September 7, 2009, plaintiff was evaluated by a physiotherapist who prescribed an exercise resistance band as physical therapy.[2] However, as of October 13, 2009, the resistance band has not been provided to plaintiff.

     <u>Analysis</u>

In his motion, plaintiff seeks: 1) to be examined by a medical practitioner with expertise in the treatment of broken shoulders; 2) to immediately be given a clavicle brace; 3) to

---

[2] This physical therapy evaluation occurred after plaintiff filed the instant motion requesting physical therapy.

5

receive any treatment suggested by the medical practitioner discussed above; and 4) to immediately receive physical therapy.

By plaintiff's own account he has been seen by an orthopedist and while the court does not have the curriculum vitae of the orthopedist, a general orthopedist is considered a specialist in broken bones. The orthopedist's treatment instructions were followed, as plaintiff received more X-rays, a CT scan and a referral to physical therapist to increase activity in plaintiff's shoulder.

Plaintiff's request to be seen by a specialist in broken bones has been carried out but it appears plaintiff merely disagrees with the medical treatment he received. Yet, it is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir.1981). Plaintiff has not demonstrated that he is likely to succeed on the merits or is likely to suffer irreparable harm. Plaintiff's request to be seen by a medical practitioner with expertise in broken shoulders and to receive all treatment suggested by such practitioner is denied.

Plaintiff's request to receive physical therapy has partially occurred since petitioner filed the instant motion. The court notes that plaintiff did not meet with the physiotherapist until approximately 21 months after suffering his injury and as of October 13, 2009, plaintiff did not receive the exercise resistance band that was recommended. Both the orthopedist and the physiotherapist advised plaintiff to engage in physical therapy. A preliminary injunction is appropriate as based on the recommendations of these physicians; plaintiff may suffer irreparable harm if he does not receive the resistance band. The court notes that providing plaintiff with a resistance band is a minor inconvenience to defendants. Defendants should be ordered to provide plaintiff with the exercise resistance band within fourteen days of adoption of these Findings etc, if it has not already occurred.

\\\\\

With respect to plaintiff's request for a clavicle brace, the court does not have sufficient information to make a ruling at this time. Defendants will be ordered to respond with additional information regarding whether a clavicle brace would be beneficial to plaintiff at this time in this stage of his recovery.

Accordingly, IT IS HEREBY ORDERED that no later than November 30, 2009, defendants shall respond with additional information regarding if a clavicle brace would be beneficial to plaintiff at this stage of his recovery.

It is further ordered that:

The Clerk assign a district judge to preside over this case;

The court's November 13, 2009, order (Doc. 16) is vacated.

IT IS HEREBY RECOMMENDED that plaintiff's motion for a preliminary injunction filed August 27, 2009 (Doc. 4) be granted in part, in that:

Defendants be ordered to provide plaintiff with the exercise resistance band within fourteen days of adoption of the Findings and recommendations, if it has not already occurred.

The motion for preliminary injunction should otherwise be denied pending further receipt of information as ordered above.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). No later than **November 30, 2009**, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed no later than **December 7, 2009**. The parties are advised that failure to file objections within the specified

\\\\\

\\\\\

\\\\\

time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 17, 2009

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

GGH: AB
matt2145.pi