IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH B. MATTHEWS,

    Plaintiff,                             No. 2:09-cv-2415 GEB KJN P

   vs.

LAHEY, et al.,

    Defendants,                  FINDINGS AND RECOMMENDATIONS

                           /

I. Introduction

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983. This case is proceeding on the original complaint, filed August 27, 2009. Plaintiff alleges that defendants were deliberately indifferent to plaintiff's serious medical needs in connection with the diagnosis and treatment of plaintiff's right shoulder, injured on December 26, 2007. Pending before the court is the motion for summary judgment filed by defendants Lahey, Tan and Traquina.[1] As explained more fully below, the court recommends that the motion for summary judgment be granted.

////

---

[1] Service on defendant Basi, the sole remaining defendant, remains outstanding.

1

II. Plaintiff's Allegations

In his verified complaint, plaintiff alleges:

1. After plaintiff arrived at the medical annex complaining of shoulder pain on December 26, 2007, defendant Nurse Lahey made plaintiff wait two hours to receive pain medication;

2. On January 22, 2008, plaintiff complained of right shoulder pain. Upon examination by defendant Dr. Tan, Dr. Tan told plaintiff that there was nothing wrong with plaintiff's shoulder; and

3. On or about February 20, 2008, defendant Dr. Traquina failed to provide a clavicle brace, and failed to provide proper medical treatment for plaintiff's broken shoulder.

At his deposition, plaintiff claimed that:

1. On December 26, 2007, when he presented at the medical annex complaining of shoulder pain, plaintiff should have been given pain medication immediately like a regular hospital allegedly would have done. (Dkt. No. 56 at 12-25; 43; 44; & 45.)

2. Defendant Dr. Tan is allegedly responsible because when plaintiff saw Dr. Tan on January 22, 2008, Dr. Tan told plaintiff there was no fracture, but one month later, Dr. Tan responded to the administrative grievance by stating that plaintiff had suffered a fracture. (Dkt. No. 56 at 40-41.)

3. Defendant Dr. Traquina is allegedly responsible because of his involvement in the administrative grievance process, and because Dr. Traquina is the supervisor of medical staff. (Dkt. No. 56 at 36-37; 38-40.)

III. Motion for Summary Judgment

Defendants move for summary judgment on the grounds that there are no genuine issues of material facts and they are entitled to judgment as a matter of law. Plaintiff filed an opposition, and defendants filed a reply. On May 16, 2011, plaintiff was granted leave to file a supplemental opposition. On June 1, 2011, plaintiff filed a supplemental opposition. No

supplemental reply was filed.

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

---

[2] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4  show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

5  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

7         By order filed December 8, 2009, the court advised plaintiff of the requirements

8  for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

9  (Dkt. No. 19); see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v.

10 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

11       B.  Undisputed Facts

12        For purposes of the instant motion for summary judgment, the court finds the

13 following facts undisputed.

14        1.  Plaintiff was in the custody of the California Department of Corrections and

15 Rehabilitation ("CDCR") at California State Prison in Solano ("CSP-Solano") from 2007 to

16 2008.

17        2.  Defendant Lahey is a licensed Registered Nurse, employed at CSP-Solano

18 from September 2001 to the present.

19        3.  Defendant Dr. Tan is a licensed physician and surgeon, employed at CSP-

20 Solano from January 2008 to the present.

21        4.  Defendant Dr. Traquina is a licensed physician, board-certified in surgery, and

22 is Chief Medical Officer at CSP-Solano since March of 2003.

23        5.  On December 26, 2007, at approximately 8:30 a.m., plaintiff heard three pops

24 in his right shoulder while plaintiff was doing dips in the prison exercise yard.  (Dkt. No. 1 at 6, ¶

25 13; Dkt. No. 56 at 9, 12.)

26        6.  It took plaintiff approximately ten minutes to get to the medical annex.  (Dkt.

No. 56 at 12.)

7. After plaintiff arrived at the medical annex, defendant Lahey gave plaintiff a form to fill out, which was completed by another inmate. (Dkt. No. 56 at 11-12.)

8. After the form was completed, defendant Lahey and another inmate helped plaintiff onto a gurney. (Dkt. No. 56 at 13-14.)

9. Defendant Lahey saw plaintiff at 8:45 a.m. on December 26, 2007. (Dkt. No. 56 at 16, 18; Dkt. No. 55-10 at 2.)

10. Plaintiff told defendant Lahey that plaintiff heard two cracks while doing dips, and plaintiff complained of pain in his right shoulder, collar bone, and neck areas. (Dkt. No. 55-10 at 2.)

11. Defendant Lahey directed plaintiff to see the attending physician, Dr. Basi. (Dkt. No. 55-10 at 2.)

12. Plaintiff was examined by Dr. Basi at approximately 9:15 a.m.[3] on December 26, 2007. (Dkt. No. 56 at 14, 16 & 18; Dkt. No. 55-10 at 2.)

13. At approximately 9:15 a.m. on December 26, 2007, Dr. Basi ordered x-rays of plaintiff's right clavicle and right shoulder. (Dkt. No. 56 at 18; Dkt. No. 55-10 at 2.)

14. At approximately 9:15 a.m. on December 26, 2007, Dr. Basi prescribed Toradol for control of plaintiff's pain. (Dkt. No. 56 at 14-15; 18; Dkt. No. 55-3 at 2.)

15. Plaintiff was to be taken to the Correctional Treatment Center ("CTC") to have x-rays taken and to receive the Toradol injection. (Dkt. No. 56 at 16 & 17; Dkt. No. 55-10 at 2.)

---

[3] In his supplemental opposition, plaintiff disputes whether he was seen by the attending physician at 9:15 a.m. and whether he was required to wait for two hours to be treated "due to the fact that Lahey deemed plaintiff's injury a non-emergency." (Dkt. No. 66 at 8.) However, plaintiff's deposition testimony contradicts this filing, and plaintiff has provided no probative evidence to the contrary. Although plaintiff was granted leave to file a supplemental opposition so that he could submit unauthenticated copies of medical records which plaintiff argued would refute defendants' motion for summary judgment, plaintiff did not provide any medical records with his supplemental opposition. (Dkt. No. 66.)

16. At approximately 9:50 a.m. on December 26, 2007, plaintiff received an injection of Toradol for pain management.  (Dkt. No. 56 at 14, 18; Dkt. No. 55-3 at 2; Dkt. No. 55-5 at 6.)

17. X-rays of plaintiff's right clavicle and right shoulder were taken on December 26, 2007.[4]

18. After plaintiff received the Toradol injection and the x-rays were taken, plaintiff returned to the medical annex.  (Dkt. No. 56 at 17, 19; Dkt. No. 55-10 at 2.)

19. Plaintiff was seen again by Dr. Basi at approximately 12:35 p.m. on December 26, 2007.  (Dkt. No. 55-10 at 2; Dkt. No. 55-3 at 2; Dkt. No. 56 at 19.)

20. At approximately 12:35 p.m. on December 26, 2007, plaintiff was provided the following treatment:

   a. Two Tylenol #3 (Tylenol with codeine) for pain management;

   b. Prescribed one or two Tylenol #3 to be taken two times per day;

   c. Issued chronos for a lower bunk, a clavicle brace, and an arm sling; and a "no-get-down" chrono to accommodate plaintiff's physical limitations;

   d. Plaintiff was given an arm sling in lieu of a clavicle brace because a clavicle brace was not available; and

   e. Plaintiff was placed on "lay-in" for twenty-nine days.  (Dkt. No. 56 at 19; Dkt. No. 55-3 at 2; Dkt. No. 14-1 at 2.)

21. Dr. Traquina confirms that an "arm sling provides similar immobilization as a clavicle brace."  (Dkt. No. 14-1 at 2.)

22. The x-rays of plaintiff's right shoulder taken on December 26, 2007, showed

---

[4] Dr. Traquina declares that the time log entered on the x-rays of plaintiff's right clavicle and right shoulder show that the x-rays were taken at approximately 10:30 a.m.  Plaintiff contends the x-rays were taken at 11:00 a.m.  In the supplemental reply, plaintiff contends it is disputed whether plaintiff received the pain injection after x-rays were taken.  (Dkt. No. 66 at 9.) However, in plaintiff's deposition, he testified that he was x-rayed after the pain injection was administered.  (Dkt. No. 56 at 15.)

neither significant abnormality nor evidence of instability.  (Dkt. No. 14-1 at 2, 10.)[5]

23. Plaintiff had no other involvement with defendant Lahey after plaintiff's visit to the medical annex on December 26, 2007.  (Dkt. No. 56 at 38.)

24. Plaintiff submitted a grievance regarding the medication he was receiving for his right shoulder pain and to have his right shoulder checked.  (Dkt. No. 56 at 20.)

25. The only involvement with plaintiff by defendant Dr. Tan was Dr. Tan's participation in plaintiff's appeal process, Log No. CSP-08-0044, at the first level of review. (Dkt. No. 56 at 21:6-8; Dkt. No. 55-8 at 2.)

26. Plaintiff received a notice from medical that he had an appointment on January 22, 2008.  (Dkt. No. 56 at 37-38.)

27. Defendant Dr. Tan[6] examined plaintiff on January 22, 2008.  (Dkt. No. 55-8 at 2; 56 at 21; Dkt. No. 1 at 8.)

28. Because of plaintiff's intolerance to ibuprofen and Tylenol #3, Dr. Tan discontinued those medications and prescribed Naproxen for pain management, which plaintiff continues to receive.  (Dkt. No. 56 at 22-23; Dkt. No. 14-1 at 2.)

29. Defendant Dr. Tan informed plaintiff that plaintiff would be seen by another doctor for plaintiff's right shoulder pain.  (Dkt. No. 56 at 22-23; Dkt. No. 14-1 at 13.)

30. On January 23, 2008, defendant Dr. Tan reviewed x-rays of plaintiff's right

---

[5] The Radiology Report sets forth the following findings: "Multiple films of the clavicle and shoulder were obtained.  Films of the AC joint were taken with weights in the hands and without weights.  No significant abnormality is seen.  The glenohumeral relationships are normal.  The acromioclavicular relationship is normal.  No evidence of instability is seen."  (Dkt. No. 14-1 at 10.)

[6] In plaintiff's supplemental reply, plaintiff contends that it is disputed whether or not plaintiff's only involvement with Dr. Tan was Dr. Tan's participation in plaintiff's appeal process.  (Dkt. No. 66 at 9.)  Dr. Tan's progress notes from the January 22, 2008 examination reflect Dr. Tan saw plaintiff in connection with plaintiff's appeal, Log No. CSP-S-08-0044. (Dkt. No. 14-1 at 14.)  Plaintiff did not provide a record citation in support of his contention that this fact is disputed, and has provided no evidence contrary to that provided by defendant Dr. Tan.  Accordingly, the court finds this fact undisputed.

1 shoulder, submitted an expedited referral for plaintiff to be seen by an orthopedic specialist ("call
2 x 5406 to get ortho appt (ASAP)"), requested repeated x-rays of plaintiff's right shoulder,
3 requested that consult be faxed to x 3493 now, and issued chronos for a lower bunk and light
4 duty. (Dkt. No. 55-8 at 2; Dkt. No. 55-3 at 2; 55-9 at 2-5.)

5     31. On January 30, 2008, a review of the January 30, 2008 x-rays showed
6 possible acromioclavicular joint separation. (Dkt. No. 14-1 at 2, 16.)

7     32. On February 20, 2008, defendant Dr. Traquina signed a second level response
8 to plaintiff's appeal, Log No. CSP-S-08-0044, which stated, in part, that the clavicle brace had
9 been ordered. (Dkt. No. 55-3 at 1; 55-4 at 2-3.) Dr. Traquina also noted that "[r]ecords also
10 indicate that [plaintiff is] not wearing the sling that was provided. . . ." (Dkt. No. 55-4 at 3.)

11     33. Plaintiff has never seen Dr. Traquina for plaintiff's right shoulder injury.
12 (Dkt. No. 56 at 34.)

13     34. Prior to this litigation, defendant Dr. Traquina's only involvement with
14 plaintiff's right shoulder complaints was Dr. Traquina's participation in plaintiff's appeal process
15 for a second level response to plaintiff's appeal, Log No. CSP-S-08-0044. (Dkt. No. 55-3 at 1.)

16     35. On May 17, 2008, plaintiff was seen by Dr. John N. Diana, an orthopedist,
17 who examined plaintiff, and requested x-rays and a CT scan of plaintiff's right shoulder to rule
18 out nonunion of the clavicle fracture. (Dkt. No. 55-5 at 3; Dkt. No. 55-5 at 19-24.)

19     36. The orthopedic consultation report done on May 17, 2008, recommended
20 further testing to rule out a non-union of the fracture. Surgery would only be recommended if
21 further diagnostic testing by CT scan showed a non-union of the fracture. (Dkt. No. 55-5 at 23.)

22     37. The x-rays taken on May 17, 2008, showed a subacute fracture of the
23 proximal right clavicle, and callus formation within complete union. (Dkt. No. 55-5 at 18.)

24     38. A CT scan was done on September 26, 2008, which showed (1) an old,
25 healed, remodeled, slightly overlapping fracture of the mid proximal clavicle, and (2) no CT
26 abnormality overlying the distal end of the clavicle. (Dkt. No. 55-5 at 3; Dkt. No. 55-5 at 25.)

1    39. On October 16, 2008, a referral for follow-up consultation was ordered. (Dkt.
2 No. 55-5 at 26; 14-1 at 2.)
3    40. On February 21, 2009, plaintiff was again seen by Dr. John N. Diana. (Dkt.
4 No. 55-14 at 7-8.) Dr. Diana's clinical impression was a "healed medial clavicular fracture."
5 (Dkt. No. 55-14 at 8.) Dr. Diana set forth the following plan for plaintiff:

> Overall [plaintiff] is doing quite well. He has no pain at the fracture site now. His nonspecific symptoms in the arm are very mild and only occasionally occur. Perhaps this is related to a stretch injury that might have occurred at the time, but no focal deficits are identified on exam today. So, I would not work this up further unless it worsened. Otherwise, [plaintiff] can increase activity as tolerated. Followup as needed in the future.

(Id.)

C.  Eighth Amendment Legal Standard

Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). According to Farmer v. Brennan, 511 U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Specifically, a determination of "deliberate indifference" involves two elements: (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. McGuckin, 974 F.2d at 1059.

First, a "serious" medical need exists if the failure to treat a prisoner's condition

could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). Examples of instances where a prisoner has a "serious" need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Second, the nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin, 974 F.2d at 1060. Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). In order for deliberate indifference to be established, there must first be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." Id. Second, there must be a resulting harm from the defendant's activities. Id. The needless suffering of pain may be sufficient to demonstrate further harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

In order to defeat defendants' motion for summary judgment, plaintiff must "produce at least some significant probative evidence tending to [show]," T.W. Elec. Serv., 809 F.2d at 630, that defendants' actions, or failures to act, were "in conscious disregard of an excessive risk to plaintiff's health," Jackson v. McIntosh, 90 F.3d at 332 (citing Farmer, 511 U.S. at 837).

D.  Analysis

The parties do not appear to dispute that a broken clavicle demonstrates a serious medical need. The court will address plaintiff's claims against each defendant seriatim.

i.  Defendant Lahey

Despite plaintiff's contention in the verified complaint that defendant Lahey kept plaintiff waiting for two hours before plaintiff was seen by a doctor on December 26, 2007, in his deposition, plaintiff conceded that he arrived at 8:40 a.m., was seen by defendant Lahey at 8:45 a.m. and defendant Lahey referred plaintiff to Dr. Basi, and Dr. Basi saw plaintiff at 9:15 a.m. The medical records support these time frames. These facts do not support a claim for deliberate indifference, and fail to rise even to the level of negligence. The record demonstrates that defendant Lahey provided appropriate and timely care to plaintiff.

In his deposition, plaintiff contends that he should have been given pain medication immediately upon arrival at the medical annex. The undisputed facts reflect that plaintiff was injured around 8:30 a.m., was seen by a doctor at 9:15 a.m., and was administered Toradol for pain at approximately 9:50 a.m. This represents an hour and a half delay in receiving pain medication. Plaintiff has adduced no evidence to demonstrate that he should have been provided pain medication immediately upon arrival at the medical annex, prior to diagnosis by a medical professional. The Ninth Circuit has found that a delay of several days in receiving pain medication for a broken shoulder did not amount to an Eighth Amendment violation. Wood v. Housewright, 900 F.2d at 1333-35. Therefore, even if plaintiff was provided the pain medication after he was x-rayed, two or three hours after plaintiff was first injured, the delay would not

constitute an Eighth Amendment violation.

For all of the above reasons, defendant Lahey is entitled to summary judgment on this claim.

### ii. Defendant Tran

It is undisputed that plaintiff first saw defendant Dr. Tan on January 22, 2008. Upon examination by Dr. Tan, plaintiff alleges Dr. Tan told plaintiff that there was nothing wrong with plaintiff's shoulder. In his deposition, plaintiff avers Dr. Tan is responsible because Dr. Tan initially stated there was nothing wrong with plaintiff's shoulder, then, one month later, in another, "yellow 602," or, grievance filed under the Americans with Disabilities Act ("ADA"), Dr. Tan claimed plaintiff had suffered a fracture. (Dkt. No. 56 at 40-41.)

The record evidence demonstrates that because of plaintiff's intolerance to ibuprofen and Tylenol #3, Dr. Tan discontinued those medications and prescribed Naproxen for pain management, which plaintiff continues to receive. Dr. Tan noted that plaintiff had no deformity, and was able to touch his opposite shoulder. (Dkt. No. 14-1 at 14.) Dr. Tan informed plaintiff that plaintiff would be seen by another doctor for plaintiff's right shoulder pain. The next day, Dr. Tan reviewed x-rays of plaintiff's right shoulder, submitted an expedited referral for plaintiff to be seen by an orthopedic specialist, requested repeat x-rays of plaintiff's right shoulder, and issued chronos for a lower bunk and light duty. On January 30, 2008, a review of the January 30, 2008 x-rays showed possible acromioclavicular joint separation.

Plaintiff has failed to demonstrate how Dr. Tan's actions demonstrate deliberate indifference. The undisputed evidence shows that Dr. Tan examined plaintiff, addressed plaintiff's medication needs, ordered repeat x-rays, and expedited a referral for plaintiff to see a specialist. The undisputed evidence reflects Dr. Tan treated plaintiff appropriately and took steps to ensure plaintiff received the services of an orthopedic specialist on an expedited basis. Plaintiff has failed to identify any other steps Dr. Tan should have taken, or was required to take. Dr. Tan's actions do not evidence deliberate indifference.

Plaintiff contends that defendant Dr. Tan should be responsible for telling plaintiff there was nothing wrong with plaintiff's shoulder, and then claiming in the administrative appeal that plaintiff did sustain a fracture. First, plaintiff has failed to provide a copy of Dr. Tan's alleged first level response.[7] Second, the statements attributed to Dr. Tan would not violate plaintiff's constitutional rights because the record evidence supports both statements. The undisputed facts demonstrate that the x-rays of plaintiff's right shoulder taken on December 26, 2007, showed neither significant abnormality nor evidence of instability. However, repeat x-rays performed on January 30, 2008, showed possible acromioclavicular joint separation. Another set of repeat x-rays were taken on May 17, 2008, which showed a subacute fracture of the proximal right clavicle, and callus formation within complete union. The CT scan done on September 26, 2008, showed an old, healed, remodeled, slightly overlapping fracture of the mid proximal clavicle.

Certainly these variances in the x-ray reports must be frustrating to plaintiff.[8] However, plaintiff has failed to show how defendant Dr. Tan's reliance on these x-rays, both initially, and after the x-rays were repeated, demonstrates deliberate indifference. The undisputed evidence shows otherwise. Defendant Tan is entitled to summary judgment on this claim.

### iii. Defendant Traquina

As noted above, plaintiff avers that on February 20, 2008, defendant Dr. Traquina

---

[7] Plaintiff appended a copy of appeal Log No. 08-00044 as Exhibit E to his complaint, but the first level appeal response is stamped "BYPASS." (Dkt. No. 1 at 36.) In his opposition, plaintiff provided a copy of defendant Dr. Traquina's second level response in Log No. 08-00044. (Dkt. No. 59 at 23-24.) Defendants provided copies of medical records completed by defendant Dr. Tan, but the court could not locate an ADA grievance form.

[8] In his supplemental response, plaintiff claims it is disputed whether defendants collectively withheld from plaintiff for at least five months the fact that his right shoulder was indeed broken. (Dkt. No. 66 at 9.) However, the x-ray reports provided confirm that it was not until May 17, 2008, that plaintiff was diagnosed as having a subacute fracture of the proximal right clavicle. No one could inform plaintiff he had a fractured clavicle until it was actually diagnosed.

failed to provide a clavicle brace and proper medical treatment for plaintiff's broken shoulder. In his deposition, plaintiff claimed Dr. Traquina is responsible because of his involvement in the administrative grievance process, and because Dr. Traquina is the supervisor of medical staff.

First, it is undisputed that prior to this litigation, Dr. Traquina's involvement was limited to reviewing and providing a second level response to plaintiff's appeal, Log No. CSP-S-08-0044, and that Dr. Traquina has never examined or seen plaintiff for plaintiff's right shoulder injury. In the second level appeal response, Dr. Traquina noted the clavicle brace had been ordered, and that records indicated plaintiff was not wearing the sling provided. Plaintiff has failed to demonstrate how defendant Traquina's response was deliberately indifferent.

Second, in his November 4, 2009 declaration, Dr. Traquina declares that an "arm sling provides similar immobilization as a clavicle brace." (Dkt. No. 14-1 at 2.) Plaintiff has failed to demonstrate, with probative evidence, that a clavicle brace was required to treat his injury, as opposed to the sling first provided on December 26, 2007, the date plaintiff was injured. Morever, plaintiff has failed to demonstrate that he suffered further significant injury or pain as a result of the failure to provide the clavicle brace.

Third, in his supplemental opposition, plaintiff states: "Dr. Traquina has averred that he didn't know that the clavicle brace was an issue until he read the complaint." (Dkt. No. 66 at 3.) Plaintiff again failed to provide a citation for this statement.[9] Dr. Traquina has provided at least three different declarations in this action. (Dkt. No. 14-1 at 1-3 (signed November 4, 2009); Dkt. No. 55-6 at 5-7 (signed December 11, 2009); Dkt. No. 55-3 at 1-3 (signed October 12, 2010). None of these declarations contain the statement attributed to Dr. Traquina by plaintiff. However, Dr. Traquina admits that his first involvement with plaintiff

---

[9] The court is mindful that plaintiff is proceeding without counsel and is incarcerated. However, the court is not required to "comb the record to find some reason to deny a motion for summary judgment," even when the plaintiff is proceeding pro se. Tran v. California, 280 Fed. App. 653, 653 (9th Cir. 2008) (quoting Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)) (affirming district court's grant of summary judgment against pro se plaintiff).

15

regarding the right shoulder injury was the review and preparation of the second level response to plaintiff's appeal, Log No. CSP-S-08-0044, which Dr. Traquina admits signing and dating on February 20, 2008. (Dkt. No. 55-3 at 1.)  In any event, the record reflects that in connection with the appeal, Log No. CSP-S-08-0044, Dr. Traquina called the Medical Supply Sergeant to confirm the clavicle brace had been ordered and was expected to be delivered within thirty days. (Dkt. No. 59 at 24.)  Plaintiff has adduced no probative evidence that Dr. Traquina was required to take any further steps in connection with the clavicle brace, or that Dr. Traquina later became aware that plaintiff had not received the clavicle brace as ordered.  Plaintiff's allegations alone are insufficient to demonstrate Dr. Traquina was deliberately indifferent to plaintiff's serious medical needs.

Fourth, in the complaint, plaintiff alleges that defendant Traquina failed to provide plaintiff with physical therapy. (Dkt. No. 1 at 13.)  However, plaintiff has provided no evidence demonstrating defendant Traquina was aware plaintiff needed physical therapy.  Dr. Traquina's second level response states that plaintiff was able to move his right arm at his shoulder, and that records indicated plaintiff could touch his opposite shoulder. (Dkt. No. 59 at 24.)  Plaintiff's complaint states that Dr. Collingsworth ordered physical therapy for plaintiff on August 19, 2009 (id. at 10), but this order was after Dr. Traquina's February 20, 2008 appeal response.  Dr. Traquina cannot be aware of an order for physical therapy that had not yet occurred.  Thus, plaintiff has failed to demonstrate that defendant Dr. Traquina was subjectively aware of any need for physical therapy.

Finally, in his deposition plaintiff contended defendant Dr. Traquina is liable because Dr. Traquina is the supervisor of medical staff.

> The Civil Rights Act under which this action was filed provides as follows:
> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where there is no evidence of personal participation). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

As argued by defendants, Dr. Traquina cannot be vicariously liable for alleged civil rights violations. Plaintiff's conclusory statements as to Dr. Traquina's responsibility are insufficient to demonstrate a violation of plaintiff's Eighth Amendment rights. Plaintiff has failed to allege any acts or omissions that are connected to defendant Traquina or that demonstrate deliberate indifference under the above standards.

////

For all of the above reasons, defendant Dr. Traquina is entitled to summary judgment.

E. Conclusion

For all of the foregoing reasons, defendants are entitled to summary judgment.

IV. Qualified Immunity

Because the court has found plaintiff's constitutional rights have not been violated, the court need not address defendants' arguments for qualified immunity.

V. Recommendations

Accordingly, for all of the reasons set forth above, IT IS HEREBY RECOMMENDED that the November 1, 2010 motion for summary judgment (dkt no. 55) be granted, and defendants Lahey, Tan and Traquina should be dismissed from this case with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 13, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

matt2415.msj